Good morning, Your Honors. May it please the Court, my name is Michael Smikin, and I represent Marc Wichansky, the appellant in this matter. I'd like to reserve six minutes of rebuttal time, Your Honor. Okay, watch your clock. Thank you, Your Honor. The sole and discrete issue that we're dealing with here today is whether Mr. Wichansky was the original source for the purpose of 31 U.S.C. 3730E4, and that is the public disclosure bar under the False Claims Act. Now, Mr. Wichansky was the original source. He had direct and independent knowledge, and he also voluntarily... Okay, but based on what we're reviewing is we have to review what was put before the District Court. Okay, and I think the District Court ultimately said, either under 12b1, 12b6, or summary judgment, that what he has submitted is not sufficient. He has not met his burden by the preponderance of the evidence. Is that, am I stating that correctly? That is correct, Your Honor. So we have to go by what you presented to the District Court, and I've also looked through the record, and I've never seen any... You're not requesting leave to amend. You've not made a proffer that you could show more than what you showed, and so if you didn't provide the District Court with evidence of the contents of those documents, how could the District Court find that you satisfied the burden of the government? Your Honor, I believe at the end of the order that was entered by Judge Campbell, he actually indicates leave to amend being denied, and saying that based on what was produced to date, it was insufficient to establish by preponderance of the evidence. But I do believe that leave was requested ultimately, but it was denied at the end of it. Okay, but you're not, you haven't requested it here. You've not made any sort of, you didn't make any sort of request. Yes, Your Honor. I believe that there was a motion to supplement as well, but that was denied. But yes, just relying solely on the documents that were presented to the District Court, there is ample evidence to establish that Mr. Wachanski was the original source, and that's really just relying... But we don't know what was in the documents. Your Honor... So he could be, he could be the original source of anything. It's got to be the original source of what, of this, right? Yes, Your Honor, and I believe in the deposition of David Bosco, Dr. David Bosco, that there again is substantial evidence to establish that Mr. Wachanski had voluntarily disclosed all of these matters to the government prior to the publication, the news report. Well, okay, so you put in the deposition testimony of David Bosco, right? Correct, Your Honor. And so, and he, so you were working with governmental agencies in connection with this matter. Answer, I had been informed early on from my knowledge of the case that the possibility existed that the FBI might be looking into this matter. So I called the FBI and asked them if they were looking into it. And the question, what did you do, and when did you do that? A, this, then, question, after you were retained, before you were retained by Wachanski? Answer, after I was retained. Question, and did you let Mr. Kellege know that you were going to do that? Answer, yes. Question, I'm going to find out who's looking into this matter kind of thing. Answer, yes. And did you give these documents, then, to the FBI? Answer, yes. So you gave the documents that you testified, the Eden document and the documents about the formula to the FBI and to the HCCS, both, right? Correct, Your Honor. I think there's two more references that are at issue as well, and I think that's on the record, page 25 and 26, where Mr. Bosco, or I believe Dr. Bosco, specifically references a meeting with the IRS in which Mr. Wachanski and his team, referring to his litigation team, was also present in a meeting with the IRS, where the issues of the billing improprieties were discussed. And I believe that's on page 25 and 26 of the record, where he specifically references that. There's also a reference, I believe it's on, in the record, on... Well, okay, but Bosco also testified that he didn't provide any information to the IRS, but met with them about billing practices at ER-25. Your Honor, I don't have the record in front of me, but I'll leave the word that he used, was the billing patterns. And at that point in time, when Dr. Bosco was retained, this was already in December 2011 and January of 2012, after Mr. Wachanski had uncovered that the billing improprieties that he thought existed in the company were actually billing fraud. So at that point in time, in the meetings with both the FBI and the IRS, the topic of the discussion was the billing fraud and how that functioned. In addition, in the pleadings, there's a detailed description about how the fraud was actually perpetrated and explained in detail, in reference to both Mr. Ron Wise, who was the expert that was retained by Mr. Wachanski, who first uncovered that the billing improprieties were not human error. There's also reference within the complaint to the investigation by Wendy Britton, who is a medical billing fraud. And then more specifically, I think, critically, is the discussion about Mr. Eden. And Mr. Eden had assisted in the investigation, and he explained his findings and his analysis of the fraud that was being perpetrated. Well, it seems to me that you acknowledge that the district court did not have the information about the contents of the Eden document or the document about the formula. And so you could have provided that information to the government about the fraud that you later alleged, but that you didn't provide the information to the district court for the district court to so find. So the district court slammed you and said you didn't meet the preponderance of the evidence. So I guess we have to look at what you did provide, and you didn't provide any of the contents of it. Well, again, Your Honor, I believe that this was very early on in the case. This was during a motion to dismiss legal sufficiency. Discovery had not yet been conducted. So certain proofs were provided to the court. Had there been an answer filed? Was this a 12B6 motion, which you transformed into a summary judgment? Your Honor, actually, I think the way Judge Campbell had addressed it was that it was a 12B6 motion, but he had converted it, believing that the fraud had only been perpetrated up until 2009, into either a 12B1 motion for lack of subject matter jurisdiction, or the alternative for a motion for summary judgment. And that's the way the court had addressed that issue. So was there an answer filed? There was no answer filed, Your Honor. However, I believe at this time, this matter was consolidated with what the court refers to as the first federal complaint. And Judge Campbell had both of them before him at that time when these issues were being addressed. So there's the first federal complaint on which the Phoenix News Time article was based upon. And then what this is now both consolidated before Judge Campbell. So he had all spectrums at this. But again, this was very early on in the case before discovery was had. And in fact, and I won't get into the details of it, but as part of the motion to supplement, there was an email that was retained that demonstrated that there was knowledge by the FBI at that time. And what was in the first federal complaint that he reviewed when he was, when they were consolidated? This was before the ruling? Yes. What were the allegations in that one? Sure. There was an allegation. There was multiple federal, the complaint included a retaliation claim under 3730H. There was a Computer Fraud and Abuse Act violation claim. And there was numerous state action claims and including a breach of fiduciary duty, which ultimately went to a jury trial and was determined in favor of Mr. Wachanski. Judgment was entered in April of 2016 in the amount of $27 million in favor of Mr. Wachanski on the breach of fiduciary duty claim. But this is after the dismissal of the action by Judge Campbell. I think it was in 2014. Did you claim, did you ask in your brief before this court, did you allege that it was error to not allow amendment and request amendment in your brief? If so, where in your brief would that be? Your Honor, candidly, I do not believe that we asked for the court to review that as an error. It was raised in the district court, but I do not believe that we raised it in our brief. So I'm conceding that point, that the request was not allowed. But again, just bringing it back, I do believe that just on the deposition transcript, the record before the court, and the pleading. But if it wasn't enough, what's your proffer of what else you could show? Well, Your Honor, again, the litigation team was present there. There was also a meeting with Peter Sexton, who was the U.S. attorney at the time where this discussion was had. As part of the motion to supplement, there was that e-mail communication by counsel for the defense in that matter, saying, hey, we're aware that Mr. Wachanski has made certain allegations against Zoell. We'd like to meet with you. There was a grand jury subpoena that was issued in 2012 requesting records from Zoell, the company. There was also communications between Rock. So you made a proffer in the district court as to how you could correct the complaint? Respectfully, Your Honor, I don't recall exactly what the proffer was, but a request was made to amend to add additional materials. And I believe Judge Campbell's opinion ultimately said, based on what you've given us, there's not enough here, and I don't think that you can cure it. So respectfully, Your Honor, I don't know what more was proffered at that time, but I do believe that based solely on the deposition, there was sufficient material. And even here in this matter, we attempted to supplement with later acquired information. But at that point, the appeal had already been filed, and therefore the court, the district court, was deprived of any jurisdiction to correct its prior motion to dismiss. But again, there was the companion case which went on that was resolved successfully in favor of the district court. So now I'd like to ask you a couple of questions about the law. First of all, the district court correctly found that the pre-2010 amendments to the False Claims Act applied, but then he went and applied the standard from the post- amended statute, right? Yes, and he converted to a motion. Was that an error? Your Honor, candidly, we'd argue here that it was not an error to convert it to a motion for summary judgment, but the error may have been not to allow additional materials or discovery. No, I'm asking you about the law. Fundamentally, did he apply the correct version of the statute? Well, Your Honor, he applied both. So, I mean, whichever way you do it, yes, you know, it was not an error, whether you reviewed it under a jurisdictional question or a motion for summary judgment. I'm not asking that question. I apologize, Your Honor. So, he applied the wrong standards, right, in whether who was the original source and what was the initial public disclosure? Didn't he rule that it should be the pre-2010 amendment is the way we should look at it, but then he actually did it with the 2010 amendments when he analyzed it? Your Honor, you know, with all respect to Judge Kimmel, I think he addressed it in both ways. In both ways. Correct. So, that's why I'm saying I don't believe it was an error because I do think that he was comprehensive. Because you had the benefit of both pre and post. Correct. And it is our position that whichever way you went through it, we had sufficient evidence to establish the preponderance of the evidence standard. And, again, it was very early on in the case when it was a question more of legal sufficiency and a question of fact that was being raised before discovery had occurred. So, I believe that's the way the judge had addressed that issue. Did you only have the one complaint? Did you ever amend? Not that complaint, Your Honor. No. We did not. The Kitam complaint, the complaint under the False Claims Act, that has never been amended. Okay. And he never addressed the issue regarding the 9B, right, because just found that under 12B1 and 12B6 insufficient, right? Correct, Your Honor. And I think he also dispatched with one of the other arguments, the 3730E3 argument as well. Right. Okay. What occurred in the prior State proceeding? Did you, did your client allege these, disclose these alleged patterns of false billing in the State court proceedings that he had filed? They were, Your Honor. It was raised in both a motion to withdraw a request for dissolution and a motion to amend. The motion to amend, the motion to amend was granted, but the amended complaint was never filed because the matter went to a valuation hearing where Judge Oberbillig in the State action specifically said, I need to address the valuation questions. Everything else we'll address later. And he bifurcated those issues and indicated there would be no preclusive effect as a result of that. But do you, did you ever argue that that was the first disclosure? That, I believe that action was under seal for quite some time, so it was never actually disclosed to the public. The only parties that really got to see it were the court and the defendants in that action. So the matter was under seal. So that was not the first disclosure? Correct. The first disclosure was the Bosky disclosure to the IRS? Is that what your argument was? Well, actually it was, there was a disclosure beforehand to Peter Sexton, who was the U.S. Attorney. But I believe what we're referring to in this and what the record shows is that it was Dr. Botsko who had met with the FBI and had met with the IRS to discuss these issues. Your Honor, unless there's any other questions, I'll reserve the time I have left. All right. Thank you. Morning, Your Honors. Morning. William J. Quinlan on behalf of the appellee and the defendant in the district court matter. May it please the Court. The False Claims Act limits the right of a private party to sue on behalf of the United States where information referring to the claim has already been disclosed to the public. One of several requirements is that a private party before suing show that he was the original source or she was the original source of the information disclosed and that he previously had disclosed the information supporting his claim to the Federal Government. Because Wachansky never disclosed the information to the Federal Government before filing suit, the district court correctly dismissed the case under the False Claims Act's public disclosure. Well, okay. So this is pretty early in the proceedings. And I'm wondering, and he's asking us to apply the principles of agency regarding this, his expert, Mr. Botsko or whatever. Correct. So that doesn't seem to me to be entirely unreasonable. But then what exactly was submitted to the district court at that point? Because then the district court went through an analysis saying he didn't meet his evidentiary burden. So we filed a motion to dismiss. We filed it as a 12B6, really a 12B1 under the prior to the 2010 amendments. All right. You didn't even file an answer. No discovery had taken place. No discovery had taken place. There hadn't been an answer. That's correct. Doesn't it strike you as a little premature for the judge to turn this into a summary judgment and, you know, enter a judgment in this case at this point in time? I don't. Well, we don't think it was premature for many reasons, the following reasons being, one, with respect to jurisdiction, if we don't apply the amendments, Justice Bortolotti, that it's a jurisdictional question and the court can look outside of the complaint. I know this court had requested and we spoke about the actual draft amendment that was filed in the state court claims. So all this information, Mr. Wachanski knew at that time. In fact, it's very detailed what he filed in the state court action. It's very thorough. What he filed in the district court and when the opportunity was there because we moved to dismiss on jurisdiction, so Mr. Wachanski was aware that we were going to go outside of the complaint. We attached things outside of the complaint. As the district court found, so did Mr. Wachanski. He had the opportunity. These people were within his control. He could have submitted an affidavit. He could have submitted something from Dr. Bosco. Okay. So let's just assume that the documents were insufficient and the district court got it right. But it's so early in the proceedings. Why shouldn't he be allowed an opportunity to amend? Well, the first I would say is, Justice Callahan, is that the appellant hasn't raised the issue about moving to amend before this court. This sole issue that has been raised in their brief and has been waived by our, at least as we see it, is the issue about whether Mr. Wachanski is an original source under the False Claims Act. In their brief, they do not address the issue about whether leave to amend. That was raised by the court below when the court looked at it both under what I'll call the pre-2010 amendments and after the 2010 amendments. Well, after they lost, did they make a motion to amend? They did not, Your Honor. And if I may correct two things that were said, there was never a motion to supplement filed. And I could direct the court to, at least in the excerpts of record, you can look and see that there was no motion to supplement filed. There was no proffer that was made in the district court either. So none of that is in the record. Yeah, I looked and I didn't see it. So I was surprised when I heard that. But I was going to go back and look at that. Okay. But the state court complaint, the judge had that, right? Correct. At the time. And that was detailed. You just mentioned that it was very detailed. Very detailed. And that was filed in, I believe, June of 2011, Judge Kendall. Okay. And so I guess my point is, depending on how you interpret it, and I'm happy whether you interpret it pre- whether it applies either the pre-2010 amendments or the 2010 amendments,      What it really comes down to is the conduct. And so, I mean, I don't disagree. I don't disagree. I would say. That's the Prather case, right? Correct. Well, I think the Prather case dealt with, at least as I understand it, a complaint that was on file while the amendments were changed. Here, this was clearly filed after the 2010 amendments. But the conduct. Yeah. Look at the conduct. So, from our position, it doesn't matter whether you apply the pre or post. What it really comes down to is three issues. And the issue has to do with, one, whether Dr. Botsko was providing this information on behalf of Mr. Wachanski. Two, you know, whether it's sufficient. So what did. All right. So they provide the deposition testimony that says he turned things over. What did the district court have specifically to review as to what those documents were? They were turned over. Yeah. Okay. There was the. I think that Dr. Botsko said that. Even document, I believe. The Eden document, the documents about the formula. So you gave the documents that you testified the Eden document and the FBI and the AHCCS both. Correct. Correct. That's correct. So did the court have those documents? They did not. At least it's not in the record. But why isn't the testimony that is in the record sufficient to raise a genuine dispute and material fact, precluding summary judgment, because Bosco was clearly retained as by Mr. Wachanski at the time that he communicated with the FBI and the IRS. And he says it was about these patterns of billing. What he says, if I'm going to be clear is, is one, he says he was retained as an expert witness to what he says is that he asked a Mr. Callagy, which the court, I believe on a summary judgment standard infers in the light, most favorable to at that point, the defendant that Mr. Callagy was Mr. Wachanski's lawyer, the moving party. So it would, they would, the light would be to the non-movie party. Correct. So it should be in the light, most favorable to Mr. Wachanski. I misspoke. I apologize. So I was trying to get the same result, which they did by inferring that when Bosco spoke to Mr. Callagy, he was speaking to Mr. Wachanski's lawyer, but the question was asked, could we provide documents to government, to law enforcement, not even government, not the U S attorney. There was no communication from Mr. Wachanski. And what was stated was that Dr. Bosco had a telephone call. And the purpose of the call, this was before the district court was to determine whether or not Zoell or it does businesses, MGA, whether it was under investigation of which Dr. Bosco stated that it would not be in Mr. Wachanski's best interest to have them suspend payments. That was the information before. And with respect to the IRS, Dr. Bosco said, he just sat in a meeting and we would also, at least which we raised. And we said it was insufficient because Dr. Bosco, the only person applying the correct standard, because it's only, only has to put in enough to raise it. Genuine dispute of material fact. Correct. And our position would be justice war law that even in the light, most judge, I'm sorry. It's okay. Even in the light, most favorable to the non-moving party, that a reasonable juror could not find by preponderance of the evidence, the information that was put in the record, the excerpts, the deposition, the snippets that our position. Is that the standard? A reasonable juror could not, I think on summary judgment, even. We, we believe the standard where we raised it as affirmative. If you, the only, I guess, if you find judge or law that the 2010 amendments do not apply, then it's a jurisdictional question with respect to whether or not Mr. Wachanski is an original source. So it would not be a summary judgment standard. It would be a preponderance. If you find that the amendments don't apply. I'm sorry. I'm sorry, but who would make that determination? Is that, is that a question of fact or a question of law? I believe it's a question of whether, whether or not the amendments apply would be a question of law. Not that question. Sorry. The question of whether there was sufficient evidence that he was an original source. I, the question would be, it would be determined by the district court. All right. The preponderance is determined by the district court. Correct. Did we review that DeNovo or is the district court entitled to any deference on that finding? I believe it's DeNovo. Judge Callahan. So there's no discovery done. Right. And so we're at a pleading stage and we have three options for the district court, the 12 B one, which would be that we just don't have jurisdiction. And if he would have ruled no jurisdiction, there is no need to amend. If the court says no jurisdiction, 12, if he had ruled 12 B six, it would have been normal to seek to file a first amendment complaint, right? Well, if under 12, whether or not to file an amended complaint or seek leave, as you would know, judge Kendall is an abusive discretion standard and it's subject to the district court. So then we go to the, then he converts to, was it a 12 B, I mean, was it a C or was it a summary judgment without any competing fact statements? How, how do we get to the summary judgment stage without any discovery? Sure. What I believe the court was doing from the opinion was it was looking at the 2010 amendments and saying, first, we don't believe that the 2010 amendments would apply to the false claims act. And if they don't apply to the false claims act, it's a question of jurisdiction as to whether or not he's an original source. So that would be a 12 B one. And you can look outside of the complaint. And then what I believe the court said was, even if the 2010 amendments would apply, I'm going to convert this to a summary judgment. Correct. Got it. And then based upon summary judgment and the standards that we discussed, it's not enough. What is before me. And did he give notice that he was going to convert it to a summary judgment to the parties? Well, what he says in his opinion, and obviously we believe is no before the opinion. I don't, it's, I sit here, I can look closer. I don't believe there was any formal notice other than the idea that the district court says, with respect to, we supplemented the record with, uh, excerpts of depositions. And what chance he didn't object to us extending beyond, and he provided his own. And I believe he cites a case and I could find it. It's off the top of my head where it's, it's a discretion of the court with respect to whether or not notice was applied. And I, I think that, you know, the question of notice would not be to know what that would be, but it's just purely notice standard. Okay. It would be abuse of discretion. No similar than. Can you assist me a little bit on the, just sort of the background that went on here. Mr. This started out these Mr. Wachansky and the other individual, I guess, do you represent him? I represent, but it's before the ninth circuit today. I represent so well, but I have represented him in other matters. Okay. So Mr. Wachansky asked to dissolve the partnership and then perhaps unwittingly didn't realize that it was going to set in motion that then that gave Mr. So well, the opportunity to buy the shares that happened and Mr. Wachansky wasn't happy with the amount that he got or what, what's this key Tom doing here? Well, it's, it's hard in all fairness, judge Callahan to understand for me to articulate Mr. Wachansky's motives, but I can tell you there was a business dispute. And this is in the record because judge Campbell took judicial notice of the state court filings. So he took judicial notice of all the state court filings. He took, if I can check, I'll check. It's a footnote in his opinion. I believe it is all, all the state court. So all of that was in front of him then. Correct. Okay. Hmm. And, and so Mr. Wachansky, there was a dispute where Mr. Wachansky tried to terminate Mr. Zoline. The state court basically refused to enter an injunction to an affirmative injunction to allow that to happen. Mr. Wachansky moved to dissolve the corporation and none of the Arizona corporations act in a close corporation like this. There's an opportunity for the other party rather than just dissolve the company. The other party has the ability to come in and basically file, but like a put where they have to buy the other party out. And then the court, if the parties can't reach an agreement, we'll determine fair value. We had a fair value hearing in the state court or we, when I say Wachansky and Zoline, so well was a nominal party. In fact, the state court judge dismissed so well from the matter and that at the end of that hearing, the court found basically a $5 million or $10 million value for the company, 5 million for each 50% and allowed, you know, set a payment plan in, in by order and then allowed certain set offs for what were called contingent liabilities in order to do that. And there was a whole process that was put in place. I can go in more detail if that's what you'd want, but that's the general parameters of what occurred. But at what point then does Mr. Wachansky say that he's concerned about Mr. Zoline's billing practices, such that the key Tom is triggered or, or at least percolating, let's say, I was going to say, I'm not taking a position that it was triggered by, right? That's why I changed my word. Billing and proprietors came up. I'm going to say relatively early, especially when you look at the fact that it's 2017 now, and we're talking about 2012. And was it before the state court? When we were, when, when the dissolution and this 50, 50 split 5 million here, if I was at part of it, the discussion of billing practices, it was raised. And in fact, the experts that I believe, you know, counsel for the appellant spoke about that is in the complaint. They were listed as experts in the valuation hearing. They never testified, but these issues were, were there the first time. I mean, the issues were raised and they were raised. And I think motions, we filed motions. They filed trying to deal with, well, you have some hot off of the presses information there. Sorry. I'm sorry about that. Well, judicial notice. I'm just, was the excerpt to record is note one, a page two. Okay. Thank you. But that means that this motion for a lead to amend the state court amendment complaint, which has all this detailed information was before the district court. Correct. But that wasn't. So if I may, I don't want to talk over you. No, go ahead. I mean, I don't, I'm, this is now I'm very perplexed by this whole thing because sure, I can, this reveals all sorts of allegations about problematic. Correct. And I think that further demonstrates why the, the court of appeals should affirm the district court's judgment, which is the question. As to the original source here, there's no question and no one disputes that this was at least this issue was put in the public domain. It was publicly disclosed. If we're working, operating under the pre 2010 amendments, the question of whether publicly disclosed, it was publicly disclosed in the state court. So the question that occurs under the pre 2010 is one has to provide the government with the information that is substantially similar. I would say the gravamen of the complaint. Right. And that's where I start parting with the district court because it, there seems to be enough evidence that his agent provided, went to the FBI and went to the IRS and talk to them about this. If I may, I respectfully disagree, which is there's enough information. I wouldn't disagree that. I mean, on a summary judgment standard, there's at least at least making that a material issue, disputed issue. And again, if we're applying the pre we're not applying the amendments, judge Ward love the summary judgment standard wouldn't apply. It would be jurisdictional. And so it would be preponderance of the evidence. What I believe the complaint shows. And I think maybe the disconnect, if I'm having one, is that the question really boils down to what information was provided. Well, first, whether or not Bosco was acting on behalf of the Chansky moving beyond that. And the question is what was provided to the government and the complaint that your honor is referencing was never, there's nothing in the record state court, federal court, that that was ever provided to the government. So the question from my perspective would be what Chansky clearly, and we don't dispute that. We'll say alleged, but these actions, he clearly had detailed information. So when you look at what was put before the state court and you ask what is before the record, what did Dr. Bosco based on the record, provide the FBI, because I would argue that they abandoned the IRS claim. When you look at the reply brief, they stopped talking about it after we raised that. They're focusing on Peter Sexton, right? I don't Peter Sexton. He's the FBI, right? Peter Sexton. Is it? It's not, this is outside of the record. Oh, okay. But I will tell you, Peter Sexton is a U S attorney from Arizona. He's a form, not the U S attorneys, a former assistant, or maybe he might be a present assistant, but he's an assistant that is not in the record. Just to be clear, but which was, and that was not before the district court. Neither was this subpoena that was referenced by appellant counsel as well. So the question, I think the legal issue or the matter that's before the court is for the original source in order under the fair claims, false claims, excuse me, if it's in the public domain, and if we're looking at before the amendments, finally in a state court puts in the public domain. So before one can file a quitam action under the statute, you have to provide the government with notice of the substance of material of the complaint. And what the district court found was these, uh, bots go going to the FBI to determine whether MJ was under investigation. And these two documents, not the complaint, the judge war law references, which I don't dispute is very detailed and very thorough. That was never provided to the government or certainly not before the record public. Of course it was public. And there was an article written about it, right? Without a doubt. So the, the issue, it's not that this wasn't publicly disclosed. The issue is whether it was given to the government. So I don't, I don't dispute. I mean, just to be clear that this was publicly disclosed and I don't think, uh, appellate counsel does too. And I don't dispute that Mr. Chancellor had detailed knowledge, you know, obviously when I say it's alleged, but I don't dispute that the question comes down and where the district court found, and I believe correctly dismissed the complaint was that the information that was provided to the government, which, you know, from a policy perspective, the idea is you go in and you tell the government so they can investigate it, especially when it's public so that the wrongdoers don't go change. We're going way over your time. So we don't need to really hear about policy. I'm sorry. I'm sorry, Your Honor. I'm sorry. I apologize. Is there, if there's any more questions, I'm happy to answer it. Or did I answer it? It's fine. Did I answer your question? I'm comfortable. Thank you. Thank you. A couple minutes. So let's get now that we're kind of down to the fulcrum of this, um, dispute. Perhaps you can tell us why there was sufficient evidence in the record to, um, demonstrate that your client was the original source. Well, again, Your Honor, first we have, uh, Dr. Botsko's, um, deposition transcript. In addition, we have the complaint, which details, um, the involvement of Mr. Eden, um, and his analysis, which again, Dr. Botsko refers to as the Eden document. And then you also have this reference to the formula spreadsheet. And the formula spreadsheet specifically refers to the excuse that's given by the defendant for how one of these frauds was perpetrated. So where is the formula spreadsheet? He didn't, why didn't, it wasn't in the record, right? Again, Your Honor. And we don't know whether Mr. Botsko didn't, he didn't give it to them, right? Well, I think he specifically says that he did give it to them. The document was not yet in the record at that point in time, because again, it was very early on inside the case. Um, it was still at the pleading stages when the motion was filed. He says he gave it to the FBI and the AHCCCS both. Correct. And, uh, he also indicates that there was a female special agent that he had dealt with who's, we can clarify her name was Sarah Epheimer. She was the special agent with the medical fraud unit, um, with the FBI. And he had met with her again before the publication of the new times, um, article. Um, just to clarify one point really quickly, Your Honor, that I think is important is that there was a motion for supplement that was filed. It was filed on August 7th, 2015. And it again, attaches that letter that goes back to August of 2012, which is this communication from Mr. Nelson, basically confirming that he's aware that the, you, uh, the United States is aware of certain information and allegations of Mr. Wachanski makes related to the medical fraud. There was also a grand jury subpoena. That was before the district court too. Um, no, it wasn't. Again, it was, it was discovered, I believe as part of the discovery production in the first federal complaint, the one that went to the jury trial in 2015. And again, at that point in time, the court was already, um, did not have jurisdiction over this matter because the appeal had been pending. And that's why the motion supplement was filed. Um, in addition, I think, um, and I apologize, Your Honors, someone had, had raised the issue about why the key tan was pending in the federal court. Although some, the issue of valuation was addressed by the state court judge, judge over Billig. He specifically said no less than three or four times on the record, which we can provide and supplement that there would be no preclusive effect, that all of the other causes of action would go on and would survive the valuation, but that he realized the importance in equity to separate these two parties and continue on with the valuation proceeding. That's why there was a first federal complaint that was filed in June of 2013. And that's why the key tan was ultimately filed under seal in September of 2013. So I'm confused about what counsel for the appellee said about supplementing the record and a proffer and requesting leave to amend. He has counsel for the appellee said the exact opposite of what you said. Your Honor. It's, you know, it's a matter of record that was filed here with the court. I don't have the docket number specifically, but I was able to review my records and I have a date of August 7th, 2015 for the filing of the motion to supplement, which included this email communication that I think essentially establishes unequivocally that defense counsel is communicating with Pete Sexton, who again is the U S attorney at the time and saying, we're aware that Mr. Wachanski has made these allegations. We're aware of these things. We, you know, we received the grand jury subpoena. We're responding to all of these issues. You moved to supplement before the district court or before us, before the court of appeals, your Honor. That's us. Correct. Yes. Okay. Okay. I understood too. Okay. But all right. So you didn't do it to the district court. That is correct. Your Honor. Did you ask to amend in the district court? Your Honor, I, to be honest with you, I can review my records, but I do not recall whether a specific motion for leave was filed, but the court did address the issue of leave to amend at the end of the order,  I think it's the last point or the second to last point before attorney's fees where he specifically references he being judge Campbell. I apologize. But specifically references that leave to amend may not be necessary under those circumstances. When did you get these records and why didn't, I mean the records that you wanted us to look at, when did you get them and why didn't you present them to the district court? Well, your Honor, I believe we received them sometime in mid to late 2015. So this appeal was filed, I believe in January or late December of 2014 at that point in time, it's our understanding that once an appeal is filed, the court is then, um, does not have jurisdiction. Right. But why, why, how did you come, how did you get those documents in that late date? Your Honor, the first, uh, the first complaint, the one with the, uh, retaliation breach fiduciary duty claims discovery was conducted in that matter. And this was produced by the defendants. It was an email communication by defense counsel through with Mr. Sexton, where he's discussing all of these issues. And again, that that was filed here, but it was after the appeal. So, so in essence, these documents and evidence was not, we're not available to you to provide to the district court at that time. That is correct. Your Honor. Yes, we did not. We were not aware of that communication at the time that was produced in discovery later. And I apologize if that was confusing in any way. No, it's just, it's just troublesome that the doc, you didn't have the documents and, and you know, we can't, um, we can't take evidence as an initial matter. Understood your Honor. There's been a lot of difficulty in obtaining discovery in this matter. It's been a very contentious issue. It's been going on since 2011 and 2016. We only get a jury verdict. And yet that issue is now up on appeal for the ninth circuit as well by, um, the appellees here. So they're the appellant, uh, now, I guess, appealing the judgment from the court. So I guess we might see you guys again down the road. That is very possible. Your Honor. All right. All right. Thank you. Thank you. Um, okay. Was Shonsky versus all holding company will be submitted.
judges: Wardlaw, Callahan, Kendall